PATRICK CASS *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE NEW YORK AND NEW HAVEN RAIL ROAD COMPANY. (*a*)

Where property is wrongfully detained, the owner may assign his title to the property, and the assignee, after a fresh demand thereof, may maintain an action, in the nature of the action of trover.

A demand from the *directors* of a corporation, who are common carriers, is not necessary in such case, when the agents of the corporation, of whom the demand

---

(*a*) INGRAHAM, FIRST J., did not participate in the decision of this case.

Cass v. The New York and New Haven R. R. Co.

was made, are charged with the whole duty of receiving, keeping, and delivering property, had by the corporation for transportation.

Accordingly, where a passenger on a rail road, having lost the check of his baggage, applied for the latter, to one of the company's employees at the station, who replied that the check or proof of the property by affidavit, must be produced; and the passenger afterwards assigned the baggage to the plaintiff, who, in company with the passenger, demanded it anew of a baggage master at the station, who represented that it was not in the defendants' possession; *held*, that the plaintiff's right of action, against the company, for the value of the baggage, was complete.

It is not erroneous to reject evidence as irrelevant, merely because a state of the proofs might subsequently arise which would render the evidence pertinent and proper; although, when counsel avow an intention to supply testimony, in the further progress of the cause, which would give pertinency to the question objected to, the court, in the exercise of that discretion which regulates the *order* of proofs, may properly allow an immediate answer.

APPEAL from the first district court, where the plaintiff obtained judgment for $100 and costs. The opinion presents a full statement of the facts.

*Samuel Jones, jr.*, for the appellant.

*E. Blankman*, for the respondent.

By THE COURT. WOODRUFF, J.—This action is prosecuted against the defendants, under the following circumstances:

One Bedina Ann Kelly took passage in the defendants' cars at Stamford, Ct., and delivered her trunk to the agent of the defendants, receiving from him a check therefor, which check she lost before she reached the office at New York. On her arrival in New York, she saw a porter, who, she was informed, was the agent of the plaintiffs, carrying her trunk from the baggage car into the defendants' office, in Canal street, which, as appeared by the evidence, was their usual place for depositing baggage. She asked him for her trunk, and told him that she had lost her check. He replied, that she must either produce the check, or prove the trunk to be her property; and she thereupon told him that it was her trunk, and "not to give it up *until she called for it;*" and "notified him 'not to de-

liver the trunk to anybody else." After which she went away, leaving the trunk there. The next day, it appears, that she went to the Bellevue hospital, where she remained for five months. After her recovery she called for her trunk, and was informed that she must make an affidavit. The purpose of the affidavit is not stated in terms, but was probably in accordance with the previous requirement, viz., to satisfy the defendants of her ownership.

The next step in the history, is an assignment of the trunk and its contents to the present plaintiff, by the woman, (Kelly,) executed at the office of the plaintiff's attorney, and dated February 3d, 1852. The assignment is not returned to us by the justice, so that we can not see its precise import; but the return states that " it was an assignment of the property," and we therefore assume that it was not *in form* (what the defendants' counsel insists it must have been in legal effect) an assignment of a mere right to recover damages.

After the execution of the assignment, the plaintiff took the witness, Kelly, to the defendants' office, (for the purpose of identifying the trunk,) and demanded its delivery. Search was made for the trunk in the baggage room, and it was not found. The defendants' agents then place their refusal to deliver, upon the ground (then for the first time stated by them) that it was not in their possession. But no attempt was made by the defendants to show where it was, or that it had been delivered to any other person, or to excuse its absence if not then in the baggage room. And it is to be observed, that according to the evidence, this demand by the plaintiff is the first demand, made of the defendants for the delivery of this trunk, after the witness, Kelly, (who had left it in the office in the charge of the person she believed to be the agent, and who was clearly acting as such, with *prima facie* authority from the defendants, else how could he have obtained the possession of the trunk to carry it from the baggage car to the office ?) had been informed that an affidavit was required by the defendants. And was also the first demand after her special injunction not to give up the trunk until she called, and not to

deliver it to anybody else, save only the interview in which the precaution of requiring such affidavit was stated to her, and to which she assented, or at least did not express any dissent.

The plaintiff, having made such demand, and having exhibited his assignment of the trunk, and proffered the assent of the former owner to a delivery to him, by her being present to identify the trunk for that very purpose, has now brought his action against the defendants for detaining the trunk, to recover its value, in a form of action which the defendants' counsel claims to be in substance the former action of trover ; and in the court below he has recovered judgment for such value to the amount of $100 and costs, from which the defendants have appealed to this court.

We are asked to reverse the judgment upon numerous grounds :

*First.* On the examination of the plaintiff's assignor, as a witness, the defendants' counsel asked her, by way of cross-examination, whether she executed the assignment to the plaintiff on the first day she was in the office of the plaintiff's attorney ? And, on objection, the court held the inquiry to be irrelevant.

On the cross examination of a witness, great latitude is properly given, and the objection that the question is irrelevant should only be sustained when the court can see that under the *then* state of the proofs, and the pleadings in the cause, the evidence has no bearing upon the matters in issue, nor upon the credibility of the witnesses. But when it can be made to appear that other proofs will probably be given, which will make the evidence material, the court, in the *exercise of discretion*, regarding the *order of proofs*, *may* allow the inquiry to be made. Here we cannot discover how this question was at all pertinent. There was no dispute about the fact that the assignment had been executed, and the evidence was uncontradicted that it was *after* the *assignment* that the plaintiff demanded the trunk. If so, it was quite immaterial to know how many times the witness had been at the attorney's office,

or at which time in particular she executed the assignment. The effect of the assignment upon her rights, and upon the rights of the plaintiff and defendants, is the same, whatever might be the answer to the question.

We can easily suppose such a state of the proofs as would show that this inquiry was quite relevant and proper. For instance, had there been a conflict of evidence on the question whether the plaintiff's *demand* was before or after the execution of the assignment, and it appeared that the witness was at the attorney's office both *before* and after the demand; and we may say further, that had the defendants' counsel avowed an intention to supply evidence in the future progress of the cause, which would give pertinency to the question objected to, it might have been a proper exercise of that discretion, which always regulates the order of proofs, to allow the question to be *then* answered. But it is not erroneous to reject evidence (as irrelevant) merely because a state of the proofs might perhaps *subsequently* arise, which would render the evidence pertinent and proper. No such state of things did arise in this case, and no injury resulted to the defendants from the rejection of the evidence.

2. The appellants insist that the action cannot be maintained, because not prosecuted in the name of the real party in interest. There is no foundation for this objection, if the witness, Kelly, had any thing which could legally be transferred by assignment. The consideration of the assignment was not questioned, if *any* consideration was necessary. The execution and delivery of the assignment were not disputed; and the witness swore that she had no interest in the matter. Even if there be circumstances of suspicion indicating that the transfer is a mere artifice, we could not reverse, in the face of this uncontradicted testimony, and on a matter of *fact*, upon which (if the pleadings can be regarded as putting it in issue) the finding of the justice must govern us.

3. But, again, the appellants insist that the claim or title of the witness, Kelly, was not assignable. That *it* was a mere title

to damages, and not properly assignable or transferable to another.

The claim to damages for a merely personal tort, is undoubtedly incapable of assignment. With this general principle, however, the present case in no wise conflicts.

The proofs showed that the defendants had the possession of the trunk in question. The person in charge required the surrender of the check or proof of ownership before he would deliver it—requirements in all respects reasonable and proper; the owner thereupon leaves the trunk, acquiesces in the views of the agent, but specially notifies him of her ownership, and enjoins upon him not to deliver it till she calls for it, and when she calls she is again informed that she must make an affidavit of the facts. She next assigns the trunk to the plaintiff, and why may she not? *Prima facie*, the trunk is in the defendants' possession, and it is as much the subject of sale or transfer as it ever was. Down to this point there is no proof of any tort by the defendants, nor of any refusal to deliver, amounting to a conversion, or to evidence of conversion, unless requiring the check or proof of ownership is such evidence of conversion, which the defendants themselves, as we think, very properly, deny, nor any evidence that the property is lost or destroyed; nor, in fact, that the trunk is not yet in their possession.

The case of *Hall* v. *Robinson*, (2 Comst. 293,) is a much stronger case for the defendants than the present, and yet there the watch in question was held by the court of appeals to be assignable, and one of the judges expressed a decided opinion, that even if there had been an actual conversion before the assignment to the plaintiff, the plaintiff might still maintain trover; in other words, that the defendants could not urge their own previous tortious or unlawful conversion of the property as a reason for not delivering it to the purchaser, nor to defeat his recovery on their refusal to deliver. The case of *Robinson* v. *Weeks*, in the supreme court, (see Code Reports, New Series, vol. i. p. 311,) holds, that *after conversion*, the right of action may be assigned.

4. Again, the defendants insist, that there can be no recovery in the present form of action, it being in substance trover, and that a common carrier is not liable in trover for goods lost through his negligence, but only in an action on the case.

If we suppose that the mere form of the action was such that there could be no recovery upon the facts proved, it might still be our duty, (the whole matter having been fully investigated, and the facts being brought before the court in such wise that justice can be done,) to order an amendment of the pleadings, instead of turning the plaintiff over to another action which, in a particular, merely technical, might be better suited to the view the appellants present.

But we feel no such necessity here ; it is not proved that the trunk was lost before the assignment in so clear a manner that we should reverse the judgment upon that assumption. The defendants have given no explanation, whatever, of the reason why the trunk is not delivered, save only that it was not found in their baggage-room when the plaintiff made the demand. They may have removed it; possibly they may have delivered it to some other person. They may have appropriated it to their own use in some other manner ; or they may now have it in some repository not yet examined. The burthen, after proof of demand and refusal, was upon *them*—conversion being *prima facie* shown, they should have proved *no* conversion ; if they would rest on a merely passive non-feasance and loss through negligence, they should have shown it—else they are liable and in *trover*.

5. This also disposes of the objection that there is no sufficient evidence of conversion. The proof of delivery of the trunk to them at Stamford—its arrival in New York—its being carried into their office, and being there when the owner left, is clear. The subsequent requirement that the owner should make an affidavit, when she called, seems to countenance the idea that the trunk was still there. Next, it is demanded, and delivery refused, on an allegation that it is not in their possession.

If its being lost or stolen from the office was a defence, the

Cass v. The New York and New Haven R. R. Co.

defendants should have proved it, otherwise it will be presumed that they have delivered it to some other person, appropriated it to their own use, or retain it still.

6. It is urged that the plaintiff does not positively show that the man who carried the trunk into the defendants' office was the defendants' agent. It is not very material whether this be so or not. The defendants had the trunk. A person took it from the cars into the office. How came they to deliver it to him, if not their agent? As against them, he is to be deemed their agent, for they entrusted it to him to carry, and he did carry it to the proper place, viz., their own office, where it remained in their possession.

7. The only remaining ground upon which the appellants insist that this judgment should be reversed, is that the action being for the unlawful detainer or conversion of the trunk in question, the defendants are not liable until after a demand made upon the *directors* of the company. The case of *Yarborough et al.* v. *The Bank of England*, 16 East, 6, (cited by the defendants' counsel,) hardly sustains the defendants' proposition. I have already remarked, that it being our duty to render judgment according to the justice of the case, without regard to technical errors or defects, we might even amend the complaint, if we deemed it necessary, and if the complaint be regarded as averring an undertaking to carry and deliver, or a receipt of the trunk under a duty to carry and deliver, and a neglect to deliver when thereto properly required, the objection would wholly fail. We do not doubt the liability of a corporation for the wrongful acts and neglects of its agents done in the course of their business, and within the scope of their employment and duty. And the general authority given by a corporation like the defendants, to the agents whom they necessarily employ for the *very purposes* for *which* they were *incorporated*, is, we think, sufficient to make them liable for the acts of such agents, done wrongfully or negligently (if *not willfully* so) in the course of their business. Here both the baggage master and the general agent, who were proved to be entrusted with the entire business of receiving, keeping and

Vol. I.                                34

delivering trunks, were applied to, and that, we think was sufficient.

It is said by the defendants' counsel, that the statute compels the defendants to give a check, and to deliver baggage on its presentment, and he urges that it is not shown that the defendants have not done so. Indeed, he argues that from all the evidence, it may be presumed that they have delivered the trunk to some one who has brought the check. To this it may be answered, *First*. The check was proved to be lost, and we cannot infer, without *some* evidence, that it was found again. *Second*. There is no evidence of any such delivery. The plaintiff was not bound to prove a *negative*, and the defendants, if they suppose such a defence would avail them, after the notice given by the true owner, must give some affirmative evidence of its truth. *Third*. The objection is founded in a matter of *fact*, in respect to which the finding of the justice is conclusive.

Upon the whole, we do not discover any sufficient reason for reversing the judgment; but on the contrary, it seems to us that the defendants are plainly liable for the value of the trunk, and that the judgment should be affirmed.

Judgment affirmed.